UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 20-82156-CIV-CANNON/Reinhart

**RICHARD JOHN LUCIBELLA**,

    Plaintiff,
v.

**TOWN OF OCEAN RIDGE**,
**RICHARD ERMERI**, and
**NUBIA PLESNIK**,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Joint Motion to Dismiss (the "Motion") [ECF No. 24], filed on January 4, 2021. The Court has considered the Motion, Plaintiff's Response in Opposition [ECF No. 34], Defendants' Reply [ECF No. 35], and the full record. For the reasons set forth below, Defendants' Motion to Dismiss [ECF No. 24] is **GRANTED IN PART AND DENIED IN PART**.

### FACTUAL BACKGROUND

This case involves various alleged civil rights violations arising out of Plaintiff Richard Lucibella's arrest on October 22, 2016, and subsequent state criminal prosecution. In October 2020, Plaintiff filed a complaint in Florida court against three named defendants: Officer Richard Ermeri, Officer Nubia Plesnik, and the Town of Ocean Ridge for various violations of Florida law and the Fourth Amendment pursuant to 42 U.S.C. § 1983 [ECF No. 1-2]. Defendants timely removed the action to this Court, after which Defendant filed an Amended Complaint on December

CASE NO. 20-82156-CIV-CANNON/Reinhart

21, 2020 [ECF No. 21].

As alleged in Plaintiff's Amended Complaint, the events leading to Plaintiff's arrest are as follows. On October 22, 2016, Officer Ermeri responded to a report of gunshots in the vicinity of the street where Plaintiff resides [ECF No. 21 ¶ 9]. After arriving in the area, Officer Ermeri spoke to pedestrians who indicated that the shots could have come from several different properties [ECF No. 21 ¶ 10]. Officer Ermeri investigated and came to the gate of Plaintiff's residence at 5 Beachway North, which is surrounded by a five-foot concrete privacy wall [ECF No. 21 ¶ 11]. The gate was closed and latched [ECF No. 21 ¶ 11]. From a standing position at the gate, Officer Ermeri called out to Plaintiff, asking if anyone inside heard gunfire [ECF No. 21 ¶ 14]. Plaintiff was sitting approximately 100 feet away with his friend, Lieutenant Wohlfiel, an off-duty police officer [ECF No. 21 ¶ 14]. Lieutenant Wohlfiel told Officer Ermeri to "get the f[***] out of here" [ECF No. 21 ¶ 14]. Officer Ermeri then entered through the gate without invitation or a warrant [ECF No. 21 ¶ 15]. Officer Ermeri asked Plaintiff if he shot a firearm, which Plaintiff denied [ECF No. 21 ¶¶ 17–18]. As it later became known, Lieutenant Wohlfiel, not Plaintiff, had fired the gunshots [ECF No 21 ¶ 19].

Officer Ermeri questioned Plaintiff further and asked if he had any firearms, to which Plaintiff replied that he had a pistol in his back pocket [ECF No. 21 ¶ 21]. Plaintiff handed over the pistol voluntarily and without incident [ECF No. 21 ¶ 21].

Plaintiff then got up to leave and go inside his home [ECF No. 21 ¶ 22]. At that point, a physical altercation broke out between Plaintiff and Officer Ermeri [ECF No. 21 ¶¶ 24–25]. Officer Ermeri first pushed Plaintiff backward, to which Plaintiff responded by poking Officer Ermeri with his finger [ECF No. 21 ¶¶ 24–25]. The physical altercation continued, during which Officer Ermeri used a "botched and reckless version of a leg sweep" to bring Plaintiff down to the

ground [ECF No. 21 ¶ 25]. Officer Plesnik also joined in the altercation and performed a knee drop into Plaintiff's back [ECF No. 21 ¶ 26]. Plaintiff was knocked unconscious during the altercation and sustained significant injuries to his head and face area, including lacerations to his face [ECF No. 21 ¶ 25].

Plaintiff was arrested for discharging a firearm in public, using a firearm while under the influence of alcohol, and resisting an officer with violence [ECF No. 21 ¶ 47]. On December 7, 2016, the State of Florida charged Plaintiff with battery on a law enforcement officer, resisting an officer with violence, and using a firearm while under the influence of alcohol [ECF No. 21 ¶ 49 (Case No. 2016CF010468 – Fifteenth Judicial Circuit in and for Palm Beach County)]. The State dropped the firearm charge at the beginning of trial [ECF No. 21 ¶ 54]. On February 1, 2019, a jury found Plaintiff not guilty of the felonies of resisting with violence and battery on a law enforcement officer but guilty of the lesser-included offense of misdemeanor simple battery [ECF No. 21 ¶ 54].

## PROCEDURAL HISTORY

On October 20, 2020, Lucibella filed a complaint in state court consisting of nine counts against the three named defendants [ECF No. 1-2]. On November 24, 2020, the Town of Ocean Ridge ("the Town") removed the case to federal court [ECF No. 1]. On December 1, 2020, Defendants moved to dismiss the complaint [ECF No. 15]. Plaintiff then filed an Amended Complaint on December 21, 2020 [ECF No. 21].

Plaintiff's Amended Complaint alleges nine counts against Defendants [ECF No. 21]. The breakdown of claims is as follows:

- <u>Count I</u>: battery against Officers Ermeri and Plesnik

- <u>Count II</u>: 42 U.S.C. § 1983 excessive force against Officers Ermeri and Plesnik

- Count III: false arrest or imprisonment against Officers Ermeri and Plesnik

- Count IV: 42 U.S.C. § 1983 false arrest/false imprisonment against Officers Ermeri and Plesnik

- Count V: malicious prosecution based upon actual malice against Officers Ermeri and Plesnik

- Count VI: 42 U.S.C. § 1983 malicious prosecution/continuing seizure against Officers Ermeri and Plesnik

- Count VII: 42 U.S.C. § 1983 unreasonable search against Officers Ermeri and Plesnik

- Count VIII: 42 U.S.C. § 1983 malicious prosecution/continuing seizure against the Town

- Count IX: 42 U.S.C. § 1983 excessive force against the Town

On January 4, 2021, Defendants filed the instant motion seeking dismissal of Counts III through IX [ECF No. 24 p. 3]. Defendants argue that (1) Plaintiff's malicious prosecution claims (Counts V, VI, and VIII) fail because Plaintiff was convicted of simple battery in state court and hence cannot show a favorable termination under the common law tort of malicious prosecution; (2) Plaintiff's federal malicious prosecution claims under § 1983 (Counts VI and VIII) fail because Plaintiff does not allege a cognizable "seizure" within the meaning of the Fourth Amendment; (3) Plaintiff's malicious prosecution and false arrest claims (Counts III, IV, V, VI, and VIII) fail because Plaintiff's simple battery conviction, along with the facts alleged in the Amended Complaint, establish probable cause for the original state court proceeding; (4) Plaintiff's unreasonable search claim (Count VII) fails because the gunshots in the neighborhood to which the officers were responding constituted exigent circumstances permitting the officers' warrantless entry onto his property; (5) Plaintiff's claims against the Town (Counts VIII and IX) fail because Plaintiff did not allege either an official decision by the Town or an unofficial custom or practice by the Town that resulted in the alleged civil rights violations; and (6) Plaintiff's claim for punitive

4

damages fails because punitive damages are not permitted in 42 U.S.C. § 1983 lawsuits—an argument Plaintiff concedes in his Response [ECF No. 24 pp. 3–4; ECF No. 34 p. 21].

Plaintiff presents various arguments in Opposition to Defendants' Motion [ECF No. 34 pp. 6–21]. Plaintiff argues, for example, that his simple battery conviction does not bar any of his malicious prosecution claims because the "any crime rule" that shields an officer from liability for false arrest does not apply to claims for malicious prosecution [ECF No. 34 p. 6]. Plaintiff further responds that even though he did not allege any detention, he was still "seized" within the meaning of the Fourth Amendment because his pretrial release after his arraignment still constituted a "continuing seizure" for the purpose of his § 1983 malicious prosecution claims [ECF No. 34 p. 7–11]. He also argues, in reference to his unreasonable search claim, that no exigency authorized the officers' warrantless entry onto his property [ECF No. 34 p. 14–17]. Finally, Plaintiff argues that his *Monell* claims (Counts VIII and IX) succeed against the Town because they are based on Town policies or customs—namely, the Police's chief's decision not to discipline or investigate the officers, which purportedly constitutes official policy, and the Town's unofficial custom of condoning forceful tactics such as leg sweeps [ECF No. 34 p. 18–21]. The Motion is now ripe for adjudication.

**LEGAL STANDARD**

To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford*

5

*Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## DISCUSSION

### A. Counts III and IV: False Arrest

As an initial matter, the Court notes that Plaintiff has conceded that his false arrest claims, Counts III and IV, are barred by the any-crime rule due to his conviction for simple battery and therefore should be dismissed [ECF No. 34 p. 11]. The any-crime rule "insulates officers from false-arrest claims so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer though or said had occurred." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). Here, Plaintiff's battery conviction establishes that probable cause for battery existed. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1319 (11th Cir. 2017) ("'[A] judgment of conviction . . . is a sufficient legal determination of the existence of probable cause . . . [unless] it be shown that the judgment was obtained by fraud, perjury, or other corrupt means.'") (quoting *Goldstein v. Sabella*, 88 So. 2d 910, 911–12 (Fla. 1956)). Plaintiff does not allege any fraud, perjury, or other corrupt means, nor does Plaintiff dispute that his battery conviction bars his false arrest claims [ECF No. 34 p. 11]. Thus, dismissal is warranted as to Counts III and IV.

### B. Counts V and VI: Malicious Prosecution

Counts V and VI allege malicious prosecution under Florida law and the Fourth Amendment against officers Ermeri and Plesnik based on three underlying criminal felony charges that ended in acquittal or were dropped before trial. These charges are as follows: (1) Battery on a Law Enforcement Officer, (2) Resisting an Officer with Violence, and (3) Using a Firearm Under the Influence of an Alcoholic Beverage [ECF No. 21 ¶¶ 49, 54]. In support of Counts V and VI, Plaintiff alleges that officers Ermeri and Plesnik made over thirty material misstatements or omissions that supported Plaintiff's prosecution and without which Plaintiff would not have been

prosecuted [ECF No. 21 ¶¶ 51–53].

Defendants move to dismiss Plaintiff's malicious prosecution claims (Counts V and VI) on the following grounds. First, according to Defendants, Plaintiff has not alleged a favorable termination under Florida law because he was convicted of the lesser-included offense of simple battery, which taints the favorability of Plaintiff's acquittal on the other charges [ECF No. 6 pp. 5–7]. Second, Defendants argue that Plaintiff's malicious prosecution claims are precluded by the holding of *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Supreme Court held that claims for damages that "necessarily imply the invalidity of a conviction or sentence" are not cognizable under § 1983 and must be dismissed unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id.* at 487. Such is the case here, Defendants contend, because Plaintiff's malicious prosecution claims dispute the existence of probable cause, which if true, necessarily implies the invalidity of Plaintiff's simple battery conviction [ECF No. pp. 7–10]. Finally, Defendants argue that Plaintiff's § 1983 malicious prosecution claims (Count VI and VIII) fail to state a claim because Plaintiff's allegation that he was required to attend judicial proceedings does not constitute a "seizure" under the Fourth Amendment [ECF No. 24 p. 5].

Plaintiff pleads claims for malicious prosecution both as a state common law tort (Count V)[1] and as a federal constitutional violation of the Fourth Amendment under § 1983 (Count VI). The Court considers each in turn.

### 1. Count V: Malicious Prosecution with Actual Malice under Florida Common Law

---

[1] Although the Complaint does not explicitly identify the source of law underlying Count V, based on the parties' arguments, the Court construes Count V as pleading a claim for the state common law tort of malicious prosecution under Florida law [ECF No. 24 p. 2, n.2; ECF No. 34 p. 2, n.3; ECF No. 35 p. 5, n. 1].

Florida has long recognized a common law tort for malicious prosecution. *See Tatum Bros. Real Est. & Inv. Co. v. Watson*, 109 So. 623, 626 (Fla. 1926) ("An action for malicious prosecution is an action in tort to recover damages for the institution, maliciously and without probable cause, of a suit which has terminated in favor of the defendant therein."). To make out such a claim, a plaintiff must establish the following elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (citing *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)).

Two elements of a malicious prosecution claim are in dispute here: favorable termination and lack of probable cause [ECF No. 24 pp. 5–10].

Defendants argue that Plaintiff does not meet the favorable termination element because he was convicted of the lesser-included offense of simple battery [ECF No. 6 pp. 5–7]. Defendants also bring a *Heck* challenge to the probable cause element of Plaintiff's malicious prosecution claim, asserting that a finding that officers did not have probable cause for the state proceeding necessarily would imply the invalidity of Plaintiff's conviction for simple battery [ECF No. pp. 7–10].

Under Florida law, the phrase "bona fide termination" means that:

> [t]he first suit[] on which the malicious prosecution suit is based, ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the charges or allegations contained in the first suit, so that a court handling the malicious prosecution suit, can conclude with confidence, that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated

8

the first suit's lack of merit.

*Doss v. Bank of Am., N.A.*, 857 So. 2d 991, 994 (Fla. 5th Dist. App. 2003) (brackets added). "[A] favorable termination exists where a dismissal is of such a nature as to indicate the innocence of the accused." *Union Oil of California Amsco Div. v. Watson*, 468 So. 2d 349, 353 (Fla. 3d Dist. App. 1985).

The Court agrees with Defendants that Plaintiff's termination of his original criminal proceeding was not favorable under Florida law. To be classified as a "favorable" termination under Florida law, the termination must "indicate[] the innocence of the accused." *Alamo Rent-A-Car*, 632 So. 2d at 1356. That is not the case here because Plaintiff was convicted of misdemeanor battery.[2] *Id.* ("[A] bona fide termination is one that indicates the innocence of the accused and is one that has not been obtained by the accused on a bargained-for promise of payment or restitution."); *Union Oil of California*, 468 So. 2d at 353 ("[A] favorable termination exists where a dismissal is of such a nature as to indicate the innocence of the accused."); Restatement (Second) of Torts § 660 (1977) ("Proceedings are terminated in favor of the accused . . . only when their final disposition is such as to indicate the innocence of the accused." (alterations omitted)). Of course, the jury acquitted Plaintiff of the greater felony charge of battery on a law enforcement officer, but "[a] conviction of a lesser included offense, even though the individual is exonerated on the greater charge, is not a termination in favor of appellant." *Fridovich v. Fridovich*, 573 So. 2d 65, 71 (Fla. 4th Dist. App. 1990), *rev'd on other grounds*, 598

---

[2] To be clear, the Florida common law standard for favorable termination is different from the standard recently set forth by the Eleventh Circuit for federal malicious prosecution claims filed pursuant to § 1983. *See Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020) ("[W]e hold that the favorable-termination element of malicious prosecution is not limited to terminations that affirmatively support the plaintiff's innocence. Instead, the favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement.").

So. 2d 65 (Fla. 1992) (quoting *Warriner v. Burdines, Inc.*, 93 So. 2d 108, 109 (Fla. 1957)). For these reasons, Plaintiff's lesser-included conviction means his termination was not favorable under Florida law, warranting dismissal of Count V. No discussion of probable cause is necessary.

### 2. Count VI: § 1983 Malicious Prosecution under the Fourth Amendment

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). With respect to the Fourth Amendment, "a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).

A plaintiff can prove that an arrest warrant was constitutionally infirm if he establishes that: (1) "the officer who applied for the warrant should have known that his application failed to establish probable cause"; or (2) "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* (internal citations omitted). With respect to intentional or reckless misstatements or omissions, the Court "should examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Spinnenweber v. Williams*, 825 F. App'x 730, 733 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1686 (2021) (quoting *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019)).

Defendants argue that Plaintiff's § 1983 malicious prosecution claim fails to state a claim because Plaintiff's allegation that he was required to attend judicial proceedings does not constitute a "seizure" implicating the Fourth Amendment [ECF No. 24 p. 5]. Plaintiff responds that his

10

pretrial proceedings do constitute a seizure because, although he was not detained pre-trial, he "was forced to attend court proceedings instead of going to work or visiting family, among other things" [ECF No. 34 p. 9; *see* ECF No. 21 ¶ 58].

Under the Fourth Amendment, a plaintiff bringing a § 1983 malicious prosecution claim must prove that he was "seized in relation to the prosecution, in violation of [his] constitutional rights." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Id.* "Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *Id.* (internal quotation marks omitted). Further, the normal conditions of pretrial release, such as bond and a summons to appear, do not constitute a seizure "barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate." *Id.* at 1236 (rejecting the "continuing seizure" theory where, one day after her warrantless arrest for DUI, the plaintiff was released on a $1,000 bond, then arraigned, and, during the course of prosecution, travelled twice from New Jersey to Florida to appear in court).

Here, Plaintiff's Amended Complaint fails to plead any deprivation of liberty sufficient to constitute a "seizure" under the Fourth Amendment. Plaintiff merely pleads in Count VI that he "was required to appear at numerous judicial proceedings for 28 months and was subjected to a continuing seizure in violation" [ECF No. 21 ¶ 58]. He does not allege any pretrial detention, restriction on his right to travel, or other significant, ongoing restriction on his liberty. Such pleading is insufficient to meet Plaintiff's burden of demonstrating a seizure. *See Kingsland*, 382 F.3d 1235; *see also Donley v. City of Morrow, Georgia*, 601 F. App'x 805, 814 (11th Cir. 2015)

11

("[T]he conditions of [the plaintiff's] pretrial release did not constitute a seizure either, given that [the plaintiff] was released on signature bond, then arraigned, and travelled from Indiana to Georgia to attend hearings during the municipal court proceedings.").

Nor, as Plaintiff asserts, does the Supreme Court's decision in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017), alter this result. In *Manuel*, the Court held that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process," *id.* at 920, but no such allegation of pretrial detention is made here.

Because Plaintiff has not adequately pleaded a "seizure" under the Fourth Amendment, his § 1983 malicious prosecution claim (Count VI) fails to state a claim.

### C. Count VII: § 1983 Unreasonable Search under the Fourth Amendment

Count VII alleges that Officers Ermeri and Plesnik violated Plaintiff's Fourth Amendment right to be free from unreasonable searches by entering and searching Plaintiff's backyard (curtilage) without a warrant or Plaintiff's consent [ECF No. 21 ¶¶ 60–61].

The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "Under the Fourth Amendment, searches and seizures 'inside a home without a warrant are presumptively unreasonable.'" *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Moreover, warrantless searches of the curtilage of a home generally violate the Fourth Amendment's prohibition on unreasonable searches. *See Collins v. Virginia*, 138 S. Ct. 1663, 1676 (2018).[3] "Nevertheless, because the ultimate touchstone of the

---

[3] "Curtilage is an area near and closely associated with the home; at the founding, it was considered part of the house for Fourth Amendment purposes." *United States v. Bruce*, 977 F.3d 1112, 1121 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2541 (2021). There is no dispute that the officers' search of Plaintiff's backyard constituted a search of the curtilage of his home within the ambit of Fourth Amendment protection [ECF No. 24 p. 10; ECF No. 21 ¶ 60].

Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). One such exception is the "exigent circumstances" exception. *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971). That exception applies when there is a compelling need for official action but no time for law enforcement to secure a warrant, and it includes situations involving "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *United States v. Holloway*, 290 F.3d 1331, 1334–35 (11th Cir. 2002); *see also Mincey v. Arizona*, 437 U.S. 385, 394 (1978). The most urgent of these exigencies is "the need to protect or preserve life" in an emergency situation. *Id.* at 1335.

For the exigent circumstance exception to apply in the case of the need to protect life, "officers must have an objectively reasonable belief that someone inside is 'seriously injured or threatened with such injury[]' and is in need of immediate aid." *United States v. Timmann*, 741 F.3d 1170, 1178 (11th Cir. 2013) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403–04 (2006)). "Courts have held police officers' belief that someone inside a home needs immediate assistance objectively reasonable under various circumstances." *Id.* at 1179. All of these cases "have in common the indicia of an urgent, ongoing emergency, in which officers have received emergency reports of an ongoing disturbance, arrived to find a chaotic scene, and observed violent behavior, or at least evidence of violent behavior." *Id.* The government bears the burden of demonstrating that the exception applies. *Holloway*, 290 F.3d at 1337.

Defendants argue that the officers' search was justified under the exigent circumstances exception because the officers were responding to reported gunshots in the area and saw a firearm and casings in Plaintiff's backyard [ECF No. 24 pp. 10–12]. Plaintiff responds that no exigency existed because the reports of gunshots were not specific to Plaintiff's home [ECF No. 34 pp. 14–

13

17].   Alternatively, Plaintiff argues that, even if there was an exigency, it had dissipated by the time the search occurred, as demonstrated by the behavior of the other officers on the scene [ECF No. 34 pp. 14–17].

Taking Plaintiff's allegations as true, Defendants have not met their burden at this stage to show the existence of exigent circumstances sufficient to justify, as a matter of law, the warrantless entry onto Plaintiff's curtilage.   Although Defendants argue that exigent circumstances existed based on the reports of gunshots, Plaintiff alleges that the reports of gunshots were not specific to Plaintiff's house but rather merely in the vicinity of his street [ECF No. 21 ¶¶ 9–10].   Plaintiff also alleges that pedestrians in the neighborhood "indicated the shots could have originated from several different properties" [ECF No. 21 ¶¶ 9–10].   Beyond that, Plaintiff alleges that (1) when the officers got to his backyard gate, Officer Ermeri's supervisor, Sergeant Hallahan, saw nothing out of the ordinary and left, stating that "[i]t didn't look like there [was] anything going on" [ECF No. 21 ¶ 12]; (2) Officer "Plesnik also was unconcerned" and left the area because she did not notice anything warranting concern [ECF No. 21 ¶ 13]; and (3) Officer Ermeri did not notice the gun or spent casings on Plaintiff's property until after he entered the curtilage through a latched gate [ECF No. 21 ¶¶ 15, 19].

Accepting Plaintiff's allegations as true, Defendants have not carried their burden to show an urgent, ongoing emergency sufficient to dismiss Count VII on the basis of exigent circumstances.   Count VII adequately states a claim for unreasonable search under the Fourth Amendment.

### D. Counts VIII and IX: *Monell* Claims against the Town of Ocean Ridge

Counts VIII and IX set forth claims of § 1983 malicious prosecution and § 1983 excessive

force, each brought against the Town of Ocean Ridge under the Fourth Amendment. Count VIII alleges that the Town contributed to Plaintiff's allegedly malicious prosecution through the actions of the police chief by failing to train, investigate, or discipline the two officers involved in the incident with Plaintiff [ECF No. 21 ¶ 64]. Count IX alleges that Officers Ermeri and Plesnik used excessive force against Plaintiff while acting in the course and scope of their employment for the Town [ECF No. 21 ¶¶ 66–67].

A city or municipality may be liable in a Section 1983 action "'only where the municipality itself causes the constitutional violation at issue.'" *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (emphasis omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 693–94 (1978). Under *Monell*, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.

To impose liability on a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (internal citation omitted); *see also Sosa v. Martin County, Fla.*, 13 F.4th 1254, 1276–77 (11th Cir. 2021). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (internal citation omitted). The policy requirement is "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make

clear that municipal liability is limited to action for which the municipality is actually responsible." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (emphasis and internal quotations omitted). Indeed, municipal liability attaches under Section 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Canton*, 489 U.S. at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986)).

Moreover, "a Section 1983 claim for inadequate training exists only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Riley v. Newton*, 94 F.3d 632, 638 (11th Cir. 1996) (internal citation omitted); *see also Canton*, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 799–800 (11th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Gold v. City of Miami*, 151 F.3d 1346, 1350–52 (11th Cir. 1998)).

Defendants argue that Counts VIII and IX against the Town fail to state a claim against the Town because those claims fail to allege how a Town policy or custom resulted in a deprivation of Plaintiff's constitutional rights [ECF No. 24 pp. 12–19]. Alternatively, Defendants argue that Count VIII fails because Plaintiff fails to allege a seizure under the Fourth Amendment [ECF No. 24 p. 18]. Plaintiff responds that it has adequately met the requirements of *Monell* by

alleging, among other things, that (1) the police chief was the final policymaker for law enforcement matters, (2) Officers Ermeri and Plesnik were not investigated or disciplined by the town, and (3) the "Town has a custom and policy of using any force necessary, including leg sweeps, to take suspects down" [ECF No. 34 pp. 19–20].

At the outset, and for the reasons stated above, the Court agrees with Defendants that Count VIII for § 1983 malicious prosecution against the Town should be dismissed because Plaintiff does not allege a seizure pursuant to legal process under the Fourth Amendment. *See Williams*, 965 F.3d at 1158 ("Malicious prosecution . . . requires a seizure pursuant to legal process.   [W]arrant-based seizures fall within this category.   So do seizures following an arraignment, indictment, or probable cause hearing.").   Instead, Plaintiff merely alleges that he was "continually seized" because he had to appear at judicial proceedings for more than two years [ECF No. 21 ¶ 63].   This is insufficient to implicate the Fourth Amendment.   *See Kingsland*, 382 F.3d 1235; *Donley*, 601 F. App'x at 814.   Because Plaintiff has not alleged any pretrial detention, Count VIII fails to state a claim and should be dismissed for this reason alone.

The Court further agrees with Defendants that Counts VIII and IX fail to allege *Monell* liability because they do not allege a custom or policy by the Town that caused Plaintiff's constitutional injury or constituted deliberate indifference to Plaintiff's constitutional rights. Plaintiff's Amended Complaint sets forth, in conclusory terms, that the Town "encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patters, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline . . . ." [ECF No. 21 ¶ 64].   More specifically, Plaintiff points to the police chief's decision not to investigate or discipline officers Ermeri and Plesnik, classifying "[t]he police chief is the final policymaker for law enforcement matters for the Town" [ECF No. 21 ¶ 64b–c].

Plaintiff also alleges that the "Town has a custom and policy of using any force necessary, including leg sweeps, to take suspects down" [ECF No. 21 ¶ 64d].

These allegations fail to meet the minimum *Monell* pleading standards.

First, the allegations in the Amended Complaint merely involve one incident—not a custom or policy pervasive enough to confer liability on the Town. *See Salvato v. Miley*, 790 F.3d 1286, 1298 (11th Cir. 2015) (holding that a "sheriff cannot be held liable under section 1983 for a single failure to investigate a constitutional violation); *see also Lordeus v. Miami-Dade County*, 263 F. Supp. 3d 1307, 1310 (S.D. Fla. 2017) (dismissing § 1983 claim against municipality where "[p]laintiff simply makes a conclusory allegation that the County 'had a policy, custom or practice of allowing its police officers to use excessive force and was on notice of the propensity for excessive force and failed to properly investigate complaints'"); *Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident would not be so pervasive as to be a custom because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.") (internal quotations omitted).

Second, even assuming Plaintiff had alleged a custom or policy beyond a single incident, Plaintiff does not allege how any lack of investigation or discipline caused Plaintiff's constitutional injury. Indeed, any investigation or discipline necessarily would have occurred well after the officer's conduct that allegedly violated Plaintiff's constitutional rights. *See Vandiver v. Meriwether County, Georgia*, 325 F. Supp. 3d 1321, 1329 (N.D. Ga. 2018) ("A policy enacted after an alleged unconstitutional event cannot be the legal cause of that event.") (citing *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (Gorsuch, J.) ("[B]asic principals [sic] of linear time prevent us from seeing how conduct that occurs after the alleged violation could have

somehow caused that violation.")). Because Plaintiff has not shown any causal connection between the police chief and the actions of the officers' alleged omissions and misstatements, Plaintiff fails to allege a Town policy causing Plaintiff's constitutional injury.

Third, Plaintiff's excessive force claim against the Town (Count IX) appears to allege *Monell* liability based on a failure to train theory, but Plaintiff's allegations are devoid of any facts to support such a theory [ECF No. 21 ¶¶ 64d–e, 65]. "To prove failure to train, [a plaintiff] would have had to provide some evidence of a pattern of improper training and show that the [municipality] was aware of the deficiencies in its program." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (internal citations and alterations omitted). Here, Plaintiff alleges, without more, that (1) the Town had a custom or policy of "using any force necessary, including leg sweeps, to take suspects down," and (2) the Town "was deliberately indifferent in not adequately training officers . . . in their use" [ECF No. 21 ¶ 64e]. Because Plaintiff does not allege anything even approaching a pattern of improper training or awareness of training deficiencies, Plaintiff's excessive force claim against the Town based on a failure to train fails.

Count VIII and Count IX are dismissed.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 24] is **GRANTED IN PART and DENIED IN PART**.

2. Counts III and IV are **DISMISSED WITH PREJUDICE** pursuant to Plaintiff's concession [ECF No. 34 p. 11].

3. Counts V, VI, VIII, and IX are **DISMISSED WITH PREJUDICE**. Any amendment to those claims would be futile for the reasons stated in this Order, and Plaintiff's Response contains nothing to suggest he could add any allegations to these counts to rectify the legal deficiencies.

4. **Defendants' Motion to Dismiss is DENIED AS TO COUNT VII. Count VII may proceed.**[4]

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 23rd day of November 2021.

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc: counsel of record

---

[4] Counts I and II are not the subject of Defendants' Motion to Dismiss and therefore proceed as well.