UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE No. 9:20-cv-82156-LEIBOWITZ/REINHART

**RICHARD JOHN LUCIBELLA**,

    *Plaintiff,*

v.

**RICHARD ERMERI, and
NUBIA SAVINO**,

    *Defendants.*

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS'** ***DAUBERT*** **MOTION AND DENYING DEFENDANTS'
MOTION TO STRIKE PLAINTIFF'S UNTIMELY EXPERT DISCLOSURE**

**THIS CAUSE** comes before the Court upon Defendants' Motion to Strike Plaintiff's Untimely Expert Disclosure [ECF No. 98], and Defendants' Motion to Exclude the Testimony and Opinions Hank Fishkind ("Fishkind") [ECF No. 100].  The Court has reviewed all applicable Responses and Replies to these Motions. [ECF No. 114, 117, 143, and 148].  The Court also held a hearing on the Motions on July 26, 2024. [ECF No. 228].

For the following reasons, Defendants' Motion to Strike Plaintiff's Untimely Expert Disclosure [ECF No. 98] is **DENIED**, and Defendants' *Daubert* Motion [ECF No. 100] is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

On October 20, 2020, Plaintiff Richard John Lucibella ("Lucibella") filed a nine-count complaint in state court against Officer Richard Ermeri ("Ermeri"), Officer Savino ("Savino"),[1]

---

[1] At the time this lawsuit was filed, Officer Savino went by Officer Plesnik.  This Court will use Officer Savino's current name.

and the Town of Ocean Ridge ("the Town").  [ECF No. 1-2].  On November 24, 2020, the Town removed the case to federal court.  [ECF No. 1].  After Defendants moved to dismiss the complaint [ECF No. 15], Plaintiff filed an Amended Complaint on December 21, 2020.  [ECF No. 21]. Following another Motion to Dismiss [ECF No. 24], a Joint Stipulation [ECF No. 152], and a Judgment from the Eleventh Circuit after an appeal from this Court's decision on Summary Judgment [ECF No. 177], there remains only an excessive force claim (Count II) and a claim for an unreasonable search in violation of the Fourth Amendment (Count VII) against Officers Ermeri and Savino.  [*See* ECF No. 163 at 9].

Defendants filed a Motion to strike a supplemental report provided by Fishkind, arguing that Plaintiff cannot establish substantial justification for the untimely disclosure, that the disclosure constitutes unfair surprise, and that the disclosure is inherently harmful.  [ECF No. 98 at 5–6].

Defendants also filed a *Daubert* Motion to Exclude Testimony and Opinions of Plaintiff's Purported Expert Witnesses George L. Kirkham and Hank Fishkind.  [ECF No. 100].  Plaintiff then filed an Amended Motion *in Limine* to Preclude or Limit the Testimony of Defendants' Purported Expert Witness, John G. Peters.  [ECF No. 112].  At the July 26, 2024, hearing, the parties stipulated that they would not be calling either George L. Kirkham or John G. Peters [ECF No. 228], and this Court accordingly mooted these Motions as they pertained to those two proffered witnesses [ECF No. 229].  Therefore, the only *Daubert* motion remaining is the Defendants' *Daubert* Motion to exclude Fishkind's testimony.  The crux of the Motion to exclude Fishkind's opinion testimony contends that he does not have the qualifications and experience necessary to render expert opinions on health care economics and that his methodology is neither reliable nor helpful to the jury.  [ECF No. 100 at 13, 15, 20].

2

This Court considers these outstanding motions in turn.

## DEFENDANTS' MOTION TO STRIKE
## PLAINTIFF'S UNTIMELY EXPERT DISCLOSURE [ECF No. 98]

### BACKGROUND

On July 12, 2021, Fishkind disclosed an initial Expert Report [ECF No. 100-3]. Pursuant to this Court's Scheduling Order [ECF No. 70], the discovery deadline for this case was November 8, 2021. On November 23, 2021, Fishkind issued a supplemental expert report ("the November Report"). [ECF No. 114-1].

Defendants moved to strike the November Report as untimely, arguing that they are unable to conduct discovery into Fishkind's opinions or underlying methodology, and that Defendants are prejudiced in their ability to offer rebuttal expert witness opinions in response to the untimely disclosure. [ECF No. 98 at 2]. Plaintiff argues that Fishkind's supplemental report merely rebutted the opinions offered by Defendants' expert (Dr. Stephens), and that the alleged failure to comply with Rule 26(a) was substantially justified as it did not create surprise for defendants, did not unfairly prejudice defendants. [ECF No. 114 at 4, 6–8].

### LEGAL STANDARD

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any expert witness who might be used at trial, along with a written expert report for certain types of expert witnesses. Fed. R. Civ. P. 26(a)(2)(A), 26(a)(2)(B); *see OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1360-61 (11th Cir. 2008). "[T]he expert disclosure rule is intended to provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for [rebuttal] expert testimony from other

witnesses.'"  *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)); *see OFS Fitel, LLC*, 549 F.3d at 1361-62.

This Court has discretion "to hold litigants to the clear terms of its scheduling orders." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).  Further, district courts may admit untimely expert reports if the untimely disclosure "was substantially justified or [was] harmless."  Fed. R. Civ. P. 37(c)(1); *see Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004); *OFS Fitel, LLC*, 549 F.3d at 1363.  The failure to disclose an expert is "substantially justified" if there is "justification to a degree that could satisfy a reasonable person that parties differ as to whether the party was required to comply with the disclosure request.  A harmless failure to disclose exists 'when there is no prejudice to the party entitled to receive the disclosure.'"  *Northrup v. Werner Enter., Inc.*, No. 8:14-cv-1627-T-27JSS, 2015 WL 4756947, at *1 (M.D. Fla. Aug. 11, 2015) (citations omitted) (*quoting Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 682-83 (M.D. Fla. 2010)).

## DISCUSSION

The Court finds that the untimely disclosure of Fishkind's November Report was substantially justified, harmless, and that Defendants are not unfairly prejudiced by the untimely disclosure— thereby satisfying Rule 37's admissibility standard.  *See* Fed. R. Civ. P. 37(c)(1). Fishkind testified on August 19, 2021, that if facts came to light showing that Dr. Rodriguez's decision to terminate the contract with PRIMUS was unrelated to the illegal search, excessive force, and arrest of Lucibella, he would need to re-calculate Lucibella's economic damages in Defendants' favor. [ECF No. 100-4 at 112:6-15 (stating that "the new information [he] received about Dr. Rodriguez" caused him to have "new thoughts on the opinions and analysis that [he] previously performed and reported in [his] report[.]; *see id.* at 61:12-25 (stating that he would

4

"need [Dr. Rodriguez] to substantiate" any new information)]. Lucibella did not obtain requested records from Dr. Rodriguez until November 6, 2021, and was not able to depose Dr. Rodriguez until November 8, 2021— the date of the discovery deadline. [ECF No. 114 at 4]. Fifteen days later, on November 23, 2021, Lucibella submitted Fishkind's November Report, which concluded that if the jury agreed that Dr. Rodriguez's contract termination was unrelated to the issues at bar, Lucibella's damages would be diminished by nearly four million dollars. [ECF No. 114-1]. If anything, the Court finds that disclosure of this information is favorable, not prejudicial, to Defendants. Fishkind was justified in providing the late-disclosed November Report because he did not have the necessary information from Dr. Rodriguez, which was disclosed by Defendants after Fishkind's initial report disclosure.

The remainder of Fishkind's November Report merely contradicts or rebuts the opinions offered by Dr. Stephens, thereby including information that district courts in the Southern District of Florida have deemed admissible routinely. *See, e.g., Coquina Invs. v. Rothstein*, No. 10–cv–60786, 2011 WL 4949191, at *3 (S.D. Fla. Oct. 18, 2011) (holding that "[a] rebuttal expert can testify as to the flaws that she believes are inherent in another expert's report that implicitly assumes or ignores certain facts"); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09–cv–61490, 2011 WL 2295269, at *6 (S.D. Fla. June 8, 2011) (allowing rebuttal expert testimony that "merely provides other factors that [the plaintiff's expert] should have considered in his report, based on her economics expertise," and explaining that "[h]ighlighting such factors will be helpful for the jury to weigh the evidence presented at trial."). Fishkind informed Defendants in his deposition that he would need to produce a supplemental report, and Fishkind's tardy disclosure was justified based on the aforementioned difficulties with obtaining information, documents, and deposition testimony. [*See* ECF No. 100-4 at 112:6-15]. For these reasons, the Court finds that

Fishkind's supplemental report neither surprised nor prejudiced the Defendants, and the Motion [ECF No. 98] is DENIED.

**DEFENDANT'S MOTION TO EXCLUDE
THE TESTIMONY AND OPINIONS OF HANK FISHKIND [ECF No. 100]**

**LEGAL STANDARD**

Federal Rule of Evidence 702 "controls the admission of expert testimony." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*). Under Rule 702, an expert witness may testify if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The Court must evaluate these requirements rigorously, and the proponent of expert testimony bears the burden of establishing admissibility. *Id.* A court can find an expert witness qualified in various ways. *Id.* "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Id.* at 1260-61. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.'" *Kilpatrick v. Breg, Inc.*, No. 08-cv-10052, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009), *aff'd*, 613 F.3d 1329 (11th Cir. 2010) (quoting *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009), *aff'd sub nom. Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010) (cleaned up).

With respect to the second component of the Rule 702 inquiry, *Daubert* and its Eleventh Circuit progeny instruct that a reliability determination involves four principal considerations about the expert's proposed theory or technique of expertise:

> (1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field.

*United States v. Pon*, 963 F.3d 1207, 1220 (11th Cir. 2020). More generally, the trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1262 (cleaned up). The district court enjoys "broad latitude" in deciding whether expert testimony is reliable, and in how to conduct that inquiry. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1312 (11th Cir. 2000).

The third component is known as the "helpfulness" prong, because the expert opinion evidence must assist or help the trier of fact determine a fact or facts at issue. Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person" but is not helpful if it offers "nothing more than what lawyers for the parties can argue in closing arguments." *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015) (quoting *Frazier*, 387 F.3d at 1262-63). "[T]he Eleventh Circuit has made it clear that expert witness testimony on an ultimate legal conclusion is not helpful to the trier of fact." *City of S. Miami v. Desantis*, No. 19-CV-22927, 2020 WL 7074644, at *13 (S.D. Fla. Dec. 3, 2020) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Additionally, expert witnesses may not speculate as to a person's state of mind or "simply recount the facts and then offer an opinion as to the conclusion which the jury should reach." *In re 3M Combat Arms Earplug*

*Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 765019, at *40 (N.D. Fla. Feb. 28, 2021) (citing *Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006)).

## DISCUSSION

### Qualifications

Defendants argue that Fishkind is not qualified to testify with respect to the subject-matter proffered by Plaintiff. [ECF No. 100 at 11–13]. The Court disagrees. Fishkind has a Ph.D. in economics and is President of a company that "assists clients in litigation with expert economic, accounting, and financial consultation and expert testimony." [ECF No. 143 at 11]. His clients include the U.S. Department of Justice, Fortune 500 companies, major property developers, and other groups. [*Id.*]. He has been deemed qualified as an expert witness to provide economic testimony over fifty (50) times in both Federal and State Courts. [*Id.* at 12]. Further, Fishkind reviewed thousands of pages of financial and other records in this case. [*Id.*].

While Defendants argue that Fishkind lacks the qualifications and experience necessary to render opinions about health care economics [*see* ECF No. 100 at 12], the Eleventh Circuit has allowed expert testimony in similar situations. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (holding that plaintiff's economic expert who lacked real estate development experience should have been allowed to testify about damages relating to real estate development because the subject-matter of testimony was sufficiently within witness's expertise). For these reasons, the Court finds that Fishkind satisfies the qualification prong of *Daubert*.

### Reliability and Helpfulness

Defendants next contend that by merely relying on Lucibella's statements and deposition transcript, Fishkind fails both the reliability and helpfulness prongs. [ECF No. 100 at 13–14, 17–19]. Defendants take aim at Fishkind's alleged wholesale dependence on the statements,

assumptions, explanations, and calculations submitted by Lucibella, claiming that Fishkind is "parrot[ing]" Lucibella. [*Id.* at 14, 15, 16, 20]. Defendants also allege that Fishkind's opinions are irrelevant to Lucibella's only remaining claims, excessive force (Count II) and unlawful search of property (Count VII). [*Id.* at 21].

Fishkind used a "before and after" methodology to quantify Lucibella's economic damages. [ECF No. 100-3 at 5]. The Eleventh Circuit has held that the "before and after" method is a well-tested, generally-recognized method of proving lost profits, and satisfies the *Frazier* factors. *See G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526, 1538 (11th Cir. 1985) ("There are two generally recognized methods of proving lost profits: (1) the before and after theory and (2) the yardstick test[.]") (quoting *Lehrman v. Gulf Oil Corporation*, 500 F.2d 659, 667 (5th Cir. 1974), *cert. denied*, 420 U.S. 929 (1975)); *see Just Play, LLC v. FitzMark, Inc.*, No. 20-cv-80663, 2021 WL 4973550, at *3 (S.D. Fla. Aug. 2, 2021). Fishkind's expert report utilized metrics such as (1) risk rating impact and (2) reduction in growth rate to quantify his "before and after" methodology. [ECF No. 100-3 at 8–9]. The Court finds Fishkind's reasoning and usage of the "before and after" methodology sufficient to withstand *Daubert* scrutiny.

In calculating economic damages using the "before and after" method, Fishkind measured other factors such as economic considerations, regulatory changes, and Centers for Medicare & Medicaid Services policy changes, all of which could have explained the deterioration of the financial performance of Lucibella's business outside of the impacts stemming from alleged wrongful acts. [ECF No 100-3 at 8–14]. Fishkind reviewed tax returns for Lucibella's umbrella company along with detailed profit/loss statements for the underlying businesses. [ECF No. 143 at 16]. Additionally, Fishkind analyzed financial documents from 2012 to 2020 related to Lucibella's businesses. [ECF No. 100-3 at 24].

Fishkind's report also supplied methodology explaining how he calculated the deterioration in risk rating of Lucibella's business. [ECF No. 100-3 at 9]. The Court finds that most of the facts and/or data that Fishkind relied upon in calculating economic damages are the kind of information that economic experts would reasonably rely on in their field of expertise and in accordance with Federal Rule of Evidence 703. *See, e.g., Conway v. Celebrity Cruises Inc.*, No. 19-cv-24470, 2021 WL 6274790, at *3 (S.D. Fla. Oct. 6, 2021) (noting that the facts or data relied on by an expert must be of the type that experts in the field would "reasonably rely on.").

The Court underscores here that it is carefully separating questions of the *admissibility* of expert testimony with the *weight* appropriately to be accorded such testimony by the fact finder. *See In re Trasylol Products Liab. Lit.*, No. 08-md-01928, 2010 WL 1489793, at *7 (S.D. Fla. Feb. 24, 2010) (citing *Quiet Tech. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). Defendants remain free, at trial, to attack Fishkind's proffered opinions, and their bases, through cross-examination. *See Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-cv-20924, 2018 WL 6520934, at *3 (S.D. Fla. Dec. 11, 2018), *report and recommendation adopted*, No. 16-cv-20924, 2019 WL 8989848 (S.D. Fla. June 5, 2019) (noting that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Fishkind's expert opinion may be admitted even if it is less-than-perfect and contains gaps. *See In re Trasylol Prods. Liab. Litig.*, 2010 WL 1489793, at *6 ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Importantly, however, Fishkind's report contains two specific opinions that are *not* rooted in well-established and reliable methodology and are therefore inadmissible: (1) "Plaintiff had to defend himself against the felony complaints against him [and that his] defense took priority over

10

managing his other healthcare related businesses[;]" and (2) "[i]n addition, [Plaintiff] could not effectively manage his other healthcare related businesses while defending himself against the Defendants' wrongful acts. As a result, there was a sharp erosion of the profitability of the businesses." [ECF No. 100-3 at 4–5]. Neither of these opinions is based on reliable methodology, as Fishkind merely relied on Lucibella's own statements, never quantified the impact of Lucibella's defense on the management of his business, and never quantified the amount of time that Lucibella devoted to his defense. *See Dynamic Motion Rides GMBH v. Universal City Dev. Partners Ltd,* 2023 WL 2681902, at *6 (M.D. Fla. Mar. 13, 2023) (citing *Rebotix Repair, LLC v. Intuitive Surgical, Inc.*, No. 8:20-cv-2274, 2022 WL 3226794, at *4 (M.D. Fla. Aug. 10, 2022) ("An expert may not present testimony that merely 'parrots' the opinions of others, without providing an independent evaluation of the evidence."); *see also City of Tuscaloosa*, 158 F.3d at 562 (explaining that district court must evaluate whether "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*"). The Court excludes these two proffered opinions.

Defendants also argue about unreliable methodology as it pertains to Fishkind's opinion that "Dr. Rodriguez decided to resign from PRIMUS in 2016 as a result of the wrongful acts." [ECF No. 100-3 at 8]. Defendants cite to Dr. Martha Rodriguez's declaration, which attested that her company New Med. P.A.'s termination of their agreement with PRIMUS was "entirely unrelated to" and "not motivated by" the October 22, 2016, subject incident. [ECF No. 100-5 ¶¶ 5, 6; ECF No. 100 at 16-17]. They allege that this opinion from Fishkind's expert report is unreliable and would mislead the jury by presenting them with opinions based on materially false premises. [ECF No. 100 at 17]. Fishkind's Supplemental Report, however, provides an updated

11

table with a summary of economic damages *without Dr. Rodriguez's impact*, which results in a reduction of nearly four million dollars in damages to Lucibella. [ECF No. 114-1 at 3].

Because the Court finds that the Supplemental Report will not prejudice Defendants, *see infra*, Fishkind may testify to the economic impact at PRIMUS without Rodriguez's termination. However, he shall not testify as to *why* Dr. Rodriguez resigned from Lucibella's business (whatever the reasons for Rodriguez's resignation are).

Finally, as it relates to the remaining claims in this matter— excessive force (Count II) and unlawful search of property (Count VII)— the Court finds a sufficient nexus between the alleged acts from the date of the subject incident, the State of Florida disqualifying Lucibella from employment with State-licensed healthcare providers and the State's Medicaid Program, and Fishkind's economic calculations. Therefore, his damages opinion that relies upon the economic impact of the State's disqualification [ECF No. 100-3 at 5] is admissible— provided that sufficient facts are adduced and found at trial to support the existence of the alleged acts, the disqualification of Lucibella's business, and causation that connects them.

## CONCLUSION

For these reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Strike Plaintiff's Untimely Expert Disclosure [**ECF No. 98**] is **DENIED**.

2. Defendant's *Daubert* Motion to Exclude Testimony and Opinions of Plaintiff's Purported Expert Witness Hank Fishkind [**ECF No. 100**] is **GRANTED IN PART AND DENIED IN PART.**

**DONE AND ORDERED** in the Southern District of Florida on August 13, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record